IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-01211-MSK-CBS

RONALD JENNINGS FOGLE,

    Plaintiff,

v.

CAPTAIN PIERSON, C.DOC, Committee Member and Chairperson at (D.R.D.C.),
WILLIAM BOKROS, C.DOC, Administrative Head/Director at (D.R.D.C.),
LT. GEORGE MESKIMEN, C.DOC, Initiating Employee at (D.R.D.C.),
FOSNOT, C.DOC, Case Manager, Committee Member at (D.R.D.C.),
S. EGAN, C.DOC, Case Manager, Committee Member at (D.R.D.C.),
LT. NORTON, C.DOC, Programmer at (D.R.D.C.),
UNKNOWN DEFENDANT #1, C.DOC, Correctional Officer at (D.R.D.C.),
UNKNOWN DEFENDANT #2, C.DOC, Correctional Officer at (D.R.D.C.),
UNKNOWN DEFENDANT #3, C.DOC, Correctional Officer at (D.R.D.C.),
JOHN R. CLARKSON, C.DOC, Committee Member at (S.C.F.),
C. WIERZHICKI, C.DOC, Committee Member at (S.C.F.),
McMONAGLE, C.DOC, Case Manager, Committee Member at (S.C.F.),
PAUL WILLIAMS, C.DOC, Committee Member at (S.C.F.),
T. CHASE, C.DOC, Administrative Head at (S.C.F.),
NICHELS, C.DOC, Case Manager, Committee Member at (S.C.F.),
M. EMILY, C.DOC, Administrative Head at (S.C.F.),
CATHY SLACK, C.DOC, Administrative Head at (C.S.P.),
V. RIDDLE, C.DOC, Committee Chairperson at (C.S.P.),
J. HUNTER, C.DOC, Case Manager, Committee Member at (C.S.P.),
J. CARROLL, C.DOC, Committee Chairperson at (C.S.P.), and
D. COMB, C.DOC, Case Manager, Committee Member at (C.S.P.),

    Defendants.

---

**ORDER GRANTING, IN PART, MOTION FOR SUMMARY JUDGMENT**

---

    THIS MATTER comes before the Court on a motion for summary judgment (**#112**) filed

by all Defendants except Defendants Williams and Emily,[1] to which the Plaintiff responded **(#142)** and the Defendants replied **(#151)**. Having considered the same, the Court finds and concludes as follows.

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### II. Procedural Background

The Plaintiff, Ronald Jennings Fogle, commenced this action in June 2005. He asserted various claims in his Complaint **(#3)** pursuant to 42 U.S.C. § 1983, all of which another judge of this district deemed to be frivolous and dismissed **(#12)** under 28 U.S.C. § 1915(e)(2)(B). Mr. Fogle appealed; the Tenth Circuit reversed the dismissal of some of his claims.

In analyzing Mr. Fogle's Complaint, the Tenth Circuit discerned five possible claims on which he could proceed: (1) that he was not given proper due process before he was assigned to administrative segregation; (2) that he was subjected to cruel and unusual punishment when he was denied all outdoor recreation for a period of 3 years; (3) that prison staff sent him to long-term administrative segregation in retaliation for his exercise of First Amendment rights because he complained about his assignment to administrative segregation and threatened to file a lawsuit; (4) that he was denied "Christian fellowship"[2]; and (5) that he was denied access to the law library

---

[1] Neither Defendants Williams nor Emily have been served with a summons and complaint. However, the moving Defendants contend that all arguments raised in this motion are equally applicable to Defendants Williams and Emily. For purposes of this ruling, the Court refers to the moving Defendants as "the Defendants." To the extent practicable, the Court will refer to particular Defendants by name.

[2] From the record in this case, it is apparent that Mr. Fogle complains that he was not allowed to attend religious services.

in preparing this case.[3]

Subsequently in this case, District Judge Phillip Figa issued an Order **(#77)** adopting the Magistrate Judge's recommendation **(#67)** to dismiss all claims against Defendant Joe Ortiz, and to dismiss all claims against the Defendants in their official capacities. The effect of that Order was that the remaining Defendants are sued in their individual capacities for compensatory and punitive damages, only.

Upon review of the record before this Court on the Defendants' motion for summary judgment, the Court discerns that Mr. Fogle now asserts the following claims: (1) that he was not given proper due process before he was assigned to administrative segregation, which resulted in him being denied all outdoor recreation and religious services throughout his assignment to administrative segregation;[4] (2) that prison staff sent him to long-term administrative segregation

---

[3] The Tenth Circuit also identified claims which were properly dismissed, as frivolous: (1) that he was treated differently from general population inmates in violation of the Equal Protection Clause; (2) that he was treated differently from other "walk-away" escapees in violation of the Equal Protection Clause; (3) that he was treated differently from other administrative segregation inmates in violation of the Equal Protection Clause; (4) that he was punished twice for his escape in violation of the Double Jeopardy Clause; and (5) that he was was denied an opportunity to accrue "earned time" credits in violation of the Due Process Clause.

[4] Although the Tenth Circuit enunciated the possibility of a freestanding Eighth Amendment claim based upon the denial of outdoor exercise, and a freestanding First Amendment claim based upon the denial of religious services, it is apparent from the instant record that Mr. Fogle complains about the denial of these things as a consequence of his placement in administrative segregation, *i.e.*, as an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). He does not complain that any particular Defendant denied him outdoor exercise in deliberate indifference to his health, or that any particular Defendant refused to allow him to attend religious services. Instead, it is his complaint that the decisions to place him in administrative segregation had these impermissible effects.
Therefore, the Court treats Mr. Fogle's allegations that he was denied outdoor exercise and religious services as part of his due process claim. However, the Court also notes that if there is a freestanding Eighth or First Amendment claim, the evidence to support them would overlap the evidence in support of the due process claims. If appropriate, the pleadings can be amended to conform with the evidence presented at trial. *See* Fed. R. Civ. P. 15(b)(2).

in retaliation for his exercise of First Amendment rights because he complained about his assignment to administrative segregation and threatened to file a lawsuit; and (3) that he was denied access to the law library in preparing this case.

### III. Issues Presented

The first issue presented is whether all or some of Mr. Fogle's claims are barred by the statute of limitations. If some claims are not barred by the statute of limitations, then the second issue presented is whether a trial is required on any of Mr. Fogle's claims.

### IV. Material Facts

Based upon the evidence submitted, Mr. Fogle's verified response,[5] and the parties' stipulated facts,[6] which the Court construes most favorably to Mr. Fogle, the Court finds for purposes of this motion that:[7]

The Plaintiff, Ronald Jennings Fogle, has been a prisoner in the custody of the Colorado Department of Corrections ("CDOC") since August 16, 2000. He was housed in administrative segregation from August 2000 until August 11, 2003. The entire time Mr. Fogle was in administrative segregation, he was not provided any outdoor exercise. This resulted in muscle loss, a vitamin D deficiency, migraine headaches, and knee and back problems. Mr. Fogle also was not allowed to attend religious services when he was in administrative segregation.

---

[5] Mr. Fogle's response to the Defendants' motion is sworn under penalty of perjury. Therefore, to the extent that it states facts within his personal knowledge, the Court treats those facts as true in this ruling.

[6] The stipulated facts are derived from the Defendants' Statement of the Facts, where Mr. Fogle expressly states that he does not dispute such facts.

[7] The following are <u>not</u> factual findings which will bind the parties in any future proceedings in this case. Rather, the Court has simply construed all evidence in a light most favorable to Mr. Fogle.

4

Upon his incarceration in 2000, Mr. Fogle was sent to the Denver Reception and Diagnostic Center ("DRDC") and immediately segregated from other inmates. Defendant Meskimem initiated the administrative segregation review process by issuing a Notice for Administrative Segregation Hearing dated September 7, 2000, which was also signed by Defendant Bokros. On September 13, 2000, Defendant Pierson recommended that Mr. Fogle be assigned to administrative segregation.[8] Defendants Fosnot and Egan were committee members who were present when Defendant Pierson made the decision. Defendant Bokros was the administrative head at DRDC who affirmed the decision. Another DRDC employee named in this action is Defendant Norton, who worked as a programmer and apparently did not participate in the decision to assign Mr. Fogle to administrative segregation.

Mr. Fogle was transferred from DRDC to the Sterling Correctional Facility on September 20, 2000, where he remained until April 17, 2002. While he was housed at the Sterling Correctional Facility, Defendant McMonagle was his case manager. Defendants Clarkson, Wierzhicki, Nichels, Williams, Chase and Emily also worked at the Sterling Correctional Facility. There, Mr. Fogle's assignment to administrative segregation was reviewed on a weekly, then monthly, basis outside of his presence. Although the signatures on the documents are not always

---

[8] The reason given for Mr. Fogle's assignment to segregation was his escape from the Denver County Jail in 1999. The parties agree that the escape occurred, but disagree that this was the actual basis for Mr. Fogle's assignment to segregation. Mr. Fogle believes that CDOC was embarassed by Mr. Fogle's escape from the Denver County Jail, because during his escape he walked right past DRDC in civilian clothes without being stopped.

legible, it appears that Defendants McMonagle, Williams,[9] Clarkson, Chase, Emily,[10] Nichels, and Wierzhicki conducted the administrative segregation reviews throughout Mr. Fogle's approximately 19-month stay at the Sterling Correctional Facility.

Mr. Fogle was transferred to the Colorado State Penitentiary on April 17, 2002, where he remained until August 11, 2003. Defendants Slack, Riddle, Carroll, Comb and Hunter were employed at the Colorado State Penitentiary, and each signed administrative review forms approving Mr. Fogle's continued assignment to administrative segregation. Defendant Hunter was also Mr. Fogle's case manager while he was housed at the Colorado State Penitentiary.

On April 25, 2003, while at the Colorado State Penitentiary, Mr. Fogle was selected to participate in the Progressive Reintegration Opportunity Unit, which allowed him to work towards integration into the general population. At first, his name was placed on the wait list for the program, but he was enrolled in the program sometime before May 28, 2003. Defendants Comb and Carroll recommended on May 28, 2003 and July 2, 2003, that Mr. Fogle remain in administrative segregation during his behavioral review. Defendant Slack approved both recommendations on June 20, 2003 and July 21, 2003. On July 23, 2003, Defendants Comb and Carroll found that Mr. Fogle completed the reintegration program and recommended that he be moved to the Centennial Correctional Facility. An "Administrative Head", whose name is illegible, approved this recommendation.

---

[9] This signature is not completely legible. On some documents, it looks like Paul Williams, who is a named Defendant. On others, it looks like Paul Walan, Paul Walian, Paul Woban, Paul Walern, Paul Woclun, or Paul Valera.

[10] This signature is also not completely legible. On some documents, it looks like N. Emily, but on others, it looks like N. Embry or N. Entz.

On August 11, 2003, Mr. Fogle was transferred to the Centennial Correctional Facility, and was no longer housed in administrative segregation. He asserts no claims against any employees of the Centennial Correctional Facility in this action.

Mr. Fogle commenced this action on June 22, 2005. However, he signed his Complaint on June 20, 2005, and the Court presumes that it was filed with the Court on that date under the prison mailbox rule.[11]

When an inmate at either the Sterling Correctional Facility or the Colorado State Penitentiary wants access to the law library or its materials, he must submit a Request for Legal Access Form to the law library directly. The law librarian then responds directly to the request. Mr. Fogle states in his affidavit/response that the Defendants would not grant him law library access, civil litigation self-help books, or the opportunity to speak with law clerks between August 2000 and August 2003. In his affidavit, Mr. Fogle does not state whether he ever submitted a Request for Legal Access Form to anyone during that time period, and there are no such forms in the record.

Mr. Fogle agrees that he never asked Defendants Fosnot, Egan, Williams, Chase, Emily, Slack, Riddle, or Carroll for access to the law library. He identifies no instance in which he asked Defendants Pierson, Bokros, Meskimen, Norton, Clarkson, Wierzhicki, McMonagle, Nichels, or Comb for access to the law library and in which such request was denied.

Once, on an unspecified date, Mr. Fogle asked Defendant Hunter for access to the law library so that he could file his §1983 complaint. Mr. Hunter refused his request, stating, "why

---

[11] *See Houston v. Lack,* 487 U.S. 266 (1988).

would I ever help you sue me?"[12] Mr. Hunter is not a law librarian.

After his assignment to administrative segregation, and usually appearing *pro se* but occasionally through counsel, Mr. Fogle filed various documents in state courts on February 7, 2001, April 13, 2001, April 23, 2001, May 7, 2001, July 30, 2001, August 1, 2001, April 2002,[13] May 16, 2002, March 3, 2003, April 10, 2003, April 16, 2003, July 28, 2003, August 4, 2003, August 8, 2003, August 18, 2003, September 8, 2003, September 10, 2003, February 26, 2004.[14]

According to prison medical records, Mr. Fogle suffers from chronic mental illness, including paranoid schizophrenia. He has a history of auditory hallucinations for which he receives psychotropic medications.

## V. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party

---

[12] Mr. Hunter denies that he ever refused the request, but for purposes of this opinion, the Court construes the evidence most favorably to Mr. Fogle.

[13] The exact date is illegible in the record.

[14] The dates which are listed here are date stamps from various courts. Some state that the documents were filed on these dates; others state that the documents were received. This is not an exhaustive listing of all date stamps in the documentary record, only of those which were legible.
  Mr. Fogle has asked the Court to strike these documents, but has not offered a sufficient legal basis for doing so. Such documents are pertinent to whether there should be equitable tolling of the statute of limitations in this case.

with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

9

## VI. Analysis

### A. Statute of Limitations

The Defendants contend that Mr. Fogle's claims are barred by the statute of limitations. They also contend that there is no basis for equitable tolling of the limitations period.

Mr. Fogle responds that his complaint was due on August 11, 2005, precisely two years after he was transferred out of the Colorado State Penitentiary to the Centennial Correctional Facility. He contends that the alleged constitutional violations against him were continuing violations which prevented the statute of limitations from running. He also contends that the Defendants misled him to believe that he could be released into the general population at any time, resulting in his delayed filing of the Complaint. He further contends that his mental illness should toll the statute of limitations.

The parties agree that the statute of limitations applicable to this civil action is two years. *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006). The Tenth Circuit directs that a complaint under § 1983 must be filed within two years after the cause of action accrues. *Id.* Federal law governs the timing of when a cause of action accrues. *Fratus v. DeLand,* 49 F.3d 673, 675 (10th Cir. 1995). An action under § 1983 "accrues when facts that would support a cause of action are or should be apparent." *Id.* However, whether a statute of limitations should be tolled rests upon state law. *Id.* It is Mr. Fogle's burden to show that his claims are timely asserted. *See Samples-Ehrlich v. Simon,* 876 P.2d 108, 110 (Colo. App. 1994).

#### 1. Applicability of Continuing Violation Doctrine

First, the Court addresses Mr. Fogle's contention that his assignment to administrative segregation amounted to a continuing violation which affected the date when his Complaint was

due. The Tenth Circuit has not determined whether the continuing violation doctrine should be applied to complaints filed under 42 U.S.C. § 1983. In *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994), the Tenth Circuit noted that this issue is unresolved, and the Court is aware of no decision after *Hunt* in which the Tenth Circuit has resolved it. In an analogous context, in *Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1514 (10th Cir. 1997), the Tenth Circuit explained that the continuing violation doctrine which developed out of Title VII law "is simply not applicable" to complaints under 42 U.S.C. § 1981.

The continuing violation doctrine and its impact on a statute of limitations pertains to accrual of a cause of action. *See Tiberi v. Cigna Corp.,* 89 F.3d 1423, 1430-31 (10th Cir. 1996). If the continuing violation doctrine did apply to § 1983 claims, it would permit a plaintiff to challenge incidents that occurred outside of the statute of limitations if the incidents "are sufficiently related and thereby constitute a continuing pattern" of wrongful conduct. *Hunt*, 17 F.3d at 1266. However, the doctrine would not allow a plaintiff to challenge discrete acts of wrongful conduct which occurred outside of the statute of limitations. *See Robinson v. Maruffi,* 895 F.2d 649, 655 (10th Cir. 1990).

In this action, Mr. Fogle asserts two types of claims. First, he seeks to hold the Defendants liable for their decisions to assign him to, or keep him in, administrative segregation. Within this first category are Mr. Fogle's claims that the Defendants made these decisions in violation of his right to due process, and in retaliation for his exercise of First Amendment rights. Second, he seeks to hold the Defendants liable for instances in which he was denied access to the law library and other legal assistance in preparing this case.

It is difficult to approach Mr. Fogle's claims, and the evidence pertaining to them, without

splitting hairs too finely.  What is evident from the record is that there were a series of decisions made by various Defendants over a multi-year period which had the result of Mr. Fogle being continuously confined in administrative segregation.  What is also evident is that each decision had the independent effect of extending Mr. Fogle's assignment to administrative segregation until the next decision was made.  At some point along the way, Mr. Fogle's assignment to administrative segregation was converted from short-term to medium-term, and then to long-term.  When these conversions occurred is not entirely clear.

     The distinctions between the various decisions are significant, because Mr. Fogle seeks to hold each decisionmaker liable for all of the subsequent decisions to keep him administrative segregation.  For instance, he seeks to hold all of the DRDC Defendants liable for the decisions made at the Sterling Correctional Facility and at the Colorado State Penitentiary, and he seeks to hold the Sterling Correctional Facility Defendants liable for the decisions made at the Colorado State Penitentiary.  Mr. Fogle asserts that this is allowed by the continuing violation doctrine.

     The Court disagrees with Mr. Fogle, for several reasons.  If the Court accepted Mr. Fogle's argument, then the Court would be required to "lump" all of the administrative segregation decisions together and overlook the discrete nature of each decision.  In other words, it would require the Court to overlook what was being decided at each hearing.  For instance, at the first hearing, the decisionmakers were deciding whether to house Mr. Fogle in administrative segregation during his temporary stay at DRDC.  At Mr. Fogle's first hearing at the Sterling Correctional Facility, different decisionmakers were deciding whether to house Mr. Fogle in administrative segregation for another week.  Thus, while the decisions had similar effects, they were fundamentally different.  It is for this reason that the Court cannot conclude that the

decisions made at DRDC are sufficiently related to the decisions made at either the Sterling Correctional Facility or the Colorado State Penitentiary, nor that the decisions made at the Sterling Correctional Facility are sufficiently related to those made at the Colorado State Penitentiary, such that the continuing violation doctrine should link them together into one due process violation.

Similarly, the retaliation claim is also based upon discrete conduct. Mr. Fogle claims that he was transferred to long-term administrative segregation at the Colorado State Penitentiary because he complained about his assignment to administrative segregation. This happened on a specific date in April 2002.[15] Likewise, Mr. Fogle's claim that he was denied access to the law library, law clerks, and jailhouse lawyers also does not allege a continuous violation. This is because each denial of a request for access to legal materials can result in a discrete constitutional violation. Thus, even if the continuing violation doctrine could apply to a § 1983 claim, it would not apply to the claims asserted in this lawsuit.

**2. Application of the Statute of Limitations**

Because the statute of limitations is 2 years, any cause of action which accrued before June 20, 2003, is barred, unless there is a basis for tolling the statute of limitations.

Most of the decisions to assign Mr. Fogle to administrative segregation were made before June 20, 2003. The only decisions made after that date were Defendant Slack's approval of two recommendations by Defendants Comb and Carroll to keep Mr. Fogle in administrative segregation pending a behavioral review. Thus, absent tolling, Mr. Fogle may proceed with his

---

[15] As discussed *infra*, Mr. Fogle expands his retaliation claim to include all decisions to assign him to administrative segregation. Expanded in this manner, the claim still consists of several discrete decisions, as opposed to a continuous violation.

13

due process claim on these decisions, only. As to all other Defendants, the due process claim is not timely asserted.

The alleged retaliation occurred in April 2002, when Mr. Fogle was transferred to the Colorado State Penitentiary. Thus, this claim accrued more than two years before he filed his Complaint, and was not timely asserted against any Defendant.

In his response, Mr. Fogle expands his retaliation claim such that every decision to keep him in administrative segregation was allegedly an act of retaliation. The only decisions to keep Mr. Fogle in administrative segregation within the statute of limitations are the June 20 and July 21, 2003 decisions by Defendant Slack on the recommendation of Defendants Comb and Carroll. Thus, unless the statute of limitations is tolled, the retaliation claim can only be premised upon those decisions.

As for his claim that he was denied access to legal materials or assistance, Mr. Fogle offers evidence of only a single instance in which he sought assistance with his §1983 complaint, and Mr. Hunter refused his request. However, there is no evidence of <u>when</u> Mr. Fogle made that request. Apart from that instance, Mr. Fogle offers no evidence that he ever attempted to directly contact the prison law library for assistance, or that any other Defendant denied him access to legal materials or assistance. Consequently, the record does not establish that Mr. Fogle was denied access to legal materials or assistance within the two year period before he filed his Complaint. Thus, he has not shown that this claim is timely asserted, either.

**3. Equitable Tolling**

In order for Mr. Fogle's due process, retaliation, and denial of access to legal assistance claims claims to be timely asserted, the Court must consider whether the statute of limitations was

equitably tolled by operation of Colorado law.[16] The notion of tolling a statute of limitations is independent from the accrual of a cause of action. *See Morrison v. Goff,* 91 P.3d 1050, 1053 (Colo. 2004). Tolling operates to either temporarily delay, or to suspend, a statute of limitations. *Id.* Here, Mr. Fogle contends that the statute of limitations was suspended until he was released from administrative segregation.

A statute of limitations may be suspended under the doctrine of equitable tolling when there are extraordinary circumstances which made it impossible for the plaintiff to timely assert the claim, or if a defendant's wrongful conduct prevented the plaintiff from timely asserting the claim. *Id.* Extraordinary circumstances are those exceptional circumstances which are completely outside of the plaintiff's control. *See Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 149-50 (Colo. 2007). For instance, extraordinary circumstances may include total closure of the court system for a lengthy period of time, a court's application of an unconstitutional statute to bar the plaintiff's claim, or a plaintiff's confinement to an internment camp during war time. *See Dean Witter Reynolds, Inc. v. Hartman,* 911 P.2d 1094, 1097 (Colo. 1996) (citing cases and examples). Wrongful conduct which may toll the statute of limitations includes: (1) misleading a plaintiff in such a way that the plaintiff does not timely file the claim, *i.e.*, through fraudulent concealment of evidence of the underlying wrong, or failing to make a statutorily required disclosure; or (2) engaging in actions which actually prevent a timely filing, *i.e.*, failing to provide the plaintiff with a

---

[16] The Tenth Circuit has already determined that Mr. Fogle's limitations period was not tolled by operation of Colorado's tolling statute, § 13-81-101(3), C.R.S., because he was not a minor under the age of 18, mentally incompetent, nor under another legal disability. It acknowledged that there may be a basis for equitable tolling, because Mr. Fogle contended that he had been denied access to law clerks and prison lawyers, and was kept in his cell most of the time. However, the Tenth Circuit did not decide whether equitable tolling would apply.

15

document needed to assert the claim, or physically harming the plaintiff, rendering him incapable of asserting claims. *See Samples-Ehrlich*, 876 P.2d at 111; *Dean Witter Reynolds, Inc.,* 911 P.2d at 1096 (citing cases and examples).

Although Mr. Fogle contends that he was misled as to when he could file his Complaint, he offers no evidence that any Defendant concealed the factual basis of his claims from him, gave him incorrect advice as to when he could file his Complaint, or failed to disclose something the Defendant was obligated to disclose.

As for Mr. Fogle's contention that the statute of limitations should be equitably tolled because of his mental illness, the only evidence before this Court is that Mr. Fogle suffers from paranoid schizophrenia and auditory hallucinations, and that he takes psychotropic medications. There is no evidence that his illness or medications prevented him from timely asserting his claims. As is evident from Mr. Fogle's numerous court filings during the time when he was in administrative segregation, his mental illness did not prevent him from filing documents with a court.

Thus, the Court turns to Mr. Fogle's contention that he was denied access to law library materials, law clerks, and jailhouse lawyers, and that this should operate to suspend the statute of limitations. He offers no evidence that any Defendant who worked at DRDC or the Sterling Correctional Facility denied him such access. Notably, there is no evidence that Mr. Fogle ever made any request for legal assistance on the required form to a law librarian, or that such a request was denied.

However, Mr. Fogle has offered evidence that one Defendant engaged in wrongful conduct which prevented Mr. Fogle from timely filing his Complaint, at least while he was housed

16

at the Colorado State Penitentiary. In specific, he offers evidence that he asked Defendant Hunter, who worked at the Colorado State Penitentiary as a case manager, for access to the law library to file this § 1983 Complaint, and Defendant Hunter refused.

The record is silent as to when this incident occurred. However, the Court treats this as a *prima facie* showing that Defendant Hunter impeded Mr. Fogle's access to the Courts while he was housed at the Colorado State Penitentiary. On this basis, equitable tolling arguably would be appropriate. However, it would only operate to temporarily suspend the statute of limitations from the date when Defendant Hunter denied Mr. Fogle's request for law library access until the date when Mr. Fogle was transferred out of the Colorado State Penitentiary. The starting point for this suspension would be no earlier than April 17, 2002, which is the date when Mr. Fogle was transferred to the Colorado State Penitentiary.

For purposes of trial, and upon Mr. Fogle's *prima facie* showing that the statute of limitations should be temporarily suspended, the Court will allow Mr. Fogle to proceed with claims only against the Colorado State Penitentiary Defendants. However, Mr. Fogle will be required, at trial, to prove that the claims accruing between April 17, 2002 and June 20, 2003, are subject to equitable tolling. The tolling issue will be determined by the Court.

**B. Retaliation Claim**

The Defendants contend that Mr. Fogle cannot make a *prima facie* showing of retaliation against Defendants Slack, Riddle, Carroll or Comb.[17] To make such showing, Mr. Fogle must offer evidence that: (1) he exercised a constitutional right; and (2) because he exercised that right, Defendants Slack, Riddle, Carroll and/or Comb retaliated against him. *See Smith v. Maschner,*

---

[17] They do not make this argument with regard to the retaliation claim against Mr. Hunter.

899 F.2d 940, 949-50 (10th Cir. 1990) (a prisoner must prove that "'but for' the retaliatory motive, the incidents . . . would not have taken place.").

Here, there is evidence that Mr. Fogle complained about his assignment to administrative segregation. For purposes of this opinion, the Court assumes that Mr. Fogle exercised a First Amendment right in doing so. However, there is no evidence Mr. Fogle made such complaints to Defendants Slack, Riddle, Carroll or Comb, that these Defendants knew about such complaints, or that they based their recommendations or decisions to keep him in administrative segregation on his exercise of a First Amendment right. Thus, Mr. Fogle has not made a *prima facie* showing of retaliation against these four Defendants, and the Court is compelled to dismiss his retaliation claim against Defendants Slack, Riddle, Carroll and Comb. However, Mr. Fogle may proceed on his retaliation claim against Mr. Hunter.

**C. Personal Participation**

Defendants Slack, Riddle, Carroll and Comb assert that Mr. Fogle cannot show that they personally participated in the alleged constitutional deprivations.[18] Although it is not entirely clear from the response, it appears to be Mr. Fogle's position that these Defendants did personally participate in the alleged violations.

To be liable under § 1983, a defendant must have personally participated in the constitutional violation. *See Olsen v. Stotts,* 9 F.3d 1475, 1477 (10th Cir. 1993). In other words, the defendant must have engaged in the violation, directed the violation, or had actual knowledge of the violation and acquiesced in its continuance. *See Jenkins v. Wood,* 81 F.3d 988, 994-95 (10th Cir. 1996). There must be an affirmative link between the defendant's conduct and the

---

[18] They do not make this argument with regard to Mr. Hunter.

constitutional violation. *See Ledbetter v. City of Topeka, Kan.,* 318 F.3d 1183, 1187 (10th Cir. 2003).

With regard to the due process claims, Defendants Slack, Riddle, Carroll and Comb each participated in decisions to keep Mr. Fogle in administrative segregation. This is sufficient to demonstrate their personal participation as to such claims.

With regard to Mr. Fogle's claim that he was denied access to a law library or other legal assistance, there is no proffered evidence that Mr. Fogle asked Defendants Slack, Riddle, Carroll or Comb for such access or assistance, or that they denied him such access or assistance. Thus, there is an insufficient showing of their personal participation, and the Court is compelled to dismiss this claim against them.

**D. Physical Injury Requirement**

The Defendants contend that Mr. Fogle's claims should be dismissed because he only seeks monetary relief and cannot prove that he suffered a physical injury. Mr. Fogle contends that he has suffered from a physical injury.

Under 42 U.S.C. § 1997e(e), a prisoner cannot recover compensatory relief "for mental or emotional injury suffered while in custody without a prior showing of physical injury." However, absent a physical injury, a prisoner can recover punitive and nominal damages. *See Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001).

Mr. Fogle has offered evidence that he has suffered from muscle loss, a vitamin D deficiency, migraine headaches, and knee and back problems caused by the lack of outdoor exercise over a period of three years. He claims that such injuries flowed directly from the decisions to place him in administrative segregation. Thus, as to his due process and retaliation claims, Mr. Fogle is not barred from recovering compensatory relief.

Arguably, the same holds true for his claim against Mr. Hunter for denial of access to the law library and other legal assistance. This is because such alleged conduct resulted in a delay in Mr. Fogle's access to the Court, and arguably contributed to the length of time he spent in administrative segregation, with its concomitant effects. At this juncture, and construing the evidence in a light most favorable to Mr. Fogle, the Court is not prepared to say that Mr. Fogle cannot recover compensatory relief on such claim.

**IT IS THEREFORE ORDERED** that:

(1) The Defendants' motion for summary judgment **(#112)** is **GRANTED IN PART** and **DENIED IN PART**.

(2) Mr. Fogle's claims against Defendants Pierson, Bokros, Meskimen, Fosnot, Egan, Norton, Clarkson, Wierzhicki, McMonagle, Chase, Nichels, Williams, Emily and all unknown Defendants are **DISMISSED**. The names of such Defendants shall be deleted from the caption.

(3) Contingent upon a showing at trial that the statute of limitations is subject to equitable tolling, the sole claims remaining in this action are: (a) Defendants Slack, Riddle, Hunter, Carroll and Comb deprived Mr. Fogle of due process when they recommended or decided to keep him in administrative segregation; (b) Defendant Hunter retaliated against Mr. Fogle for his exercise of First Amendment rights; and (c) Defendant Hunter deprived Mr. Fogle of access to the law library and other legal assistance, impeding his right of access to the courts.

Dated this 26th day of March, 2008

**BY THE COURT:**

*Marcia S. Krieger*
_____
Marcia S. Krieger
United States District Judge