**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

RONALD JENNINGS FOGLE, )
)
      Plaintiff, )
) CIVIL ACTION
v. ) No. 05-cv-1211-KHV
)
CATHY SLACK, V. RIDDLE, )
J. HUNTER, J. CARROLL and )
D. COMB, )
)
      Defendants. )
_____)

## MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

Plaintiff Ronald Jennings Fogle, a prisoner in the custody of the Colorado Department of Corrections, claims under 42 U.S.C. § 1983 that personnel from the Colorado State Penitentiary ("CSP") violated his constitutional rights.[1] Plaintiff alleges the following claims: (1) defendants Slack, Riddle, Hunter, Carroll and Comb deprived him of due process when they recommended or decided to keep him in administrative segregation without providing a written statement of the reason for their decision or notice or the opportunity to be heard before an impartial decision maker; (2) defendant Hunter retaliated by recommending that plaintiff remain in administrative segregation because he had exercised his First Amendment right to complain about his assignment to administrative segregation; and (3) defendant Hunter denied plaintiff access to the law library or other legal assistance in filing his complaint in this case. See Doc. #263. Defendants assert that the

---

[1] Fogle became a prisoner of the Colorado Department of Corrections ("CDOC") on August 16, 2000. CDOC initially placed him at the Denver Reception and Diagnostic Center, which immediately assigned him to administrative segregation because he had escaped from the Denver County Jail in 1999. Fogle transferred to the Sterling Correctional Facility on September 20, 2000, where he remained in administrative segregation until April 17, 2002. On April 17, 2002, Fogle transferred to CSP, where he remained in administrative segregation until his transfer to Centennial Correctional Facility on August 11, 2003.

statute of limitations bars all but a few of plaintiff's claims. Plaintiff counters that equitable tolling negates defendants' statute of limitations defense. The parties tried the equitable tolling issue to this Court on July 12, 2010. After hearing the arguments and the evidence, the Court concludes for the reasons stated below that plaintiff is not entitled to equitable tolling to suspend the statute of limitations.

## **Background And Procedural History**

On March 26, 2008, the Honorable Marcia Krieger granted summary judgment on plaintiff's claims against prison personnel from the CDOC, the Denver Reception and Diagnostic Center ("DRDC") and Sterling Correctional Facility ("SCF"). See Doc. #166. Specifically, Judge Krieger found that because the claims against those defendants accrued before June 20, 2003, the two-year statute of limitations barred them.[2]

Judge Krieger also found that except for two instances where Slack approved recommendations by Combs and Carroll to retain plaintiff in administrative segregation, all claims against the remaining defendants occurred before June 20, 2003.[3] Plaintiff had offered evidence, however, that at some point Hunter had denied plaintiff's request for access to the law library. Because Hunter might have prevented plaintiff from timely filing his complaint, Judge Krieger declined to enter summary judgment on plaintiff's due process claims. Instead, she determined that

---

[2] Under the prisoner mailbox rule, the Court deemed Fogle's complaint filed as of June 20, 2005. Absent tolling, for purposes of the two-year statute of limitations, June 20, 2003 is the relevant cut-off date.

[3] The parties agree that if plaintiff is not entitled to equitable tolling, the only remaining issues for trial are plaintiff's due process claims which arose after June 20, 2003: that (1) Slack approved a Administrative Segregation Classification review on June 20, 2003 (Ex. 118); (2) Comb and Carroll recommended that plaintiff be retained in administrative segregation on July 2, 2003 (Ex. 119) and (3) Slack approved a Administrative Segregation Classification Review on July 21, 2003 (Ex. 119)..

-2-

the statute might be equitably tolled from the unspecified date when Hunter denied plaintiff's request for access to the law library. She also ruled that because plaintiff offered no evidence that his retaliation and denial of access to court claims arose after June 20, 2003 those claims were barred unless plaintiff later offered evidence that those claims should be equitably tolled.

On November 2, 2009, the parties jointly submitted a proposed pretrial order (Doc. #263) which Judge Krieger approved on November 12, 2009. See Doc. # 267. In the pretrial order, plaintiff advanced five equitable tolling theories: conspiracy, on-going continuing violation doctrine, denial of access to civil law material, denial of institutional grievances and mental incompetence. By its terms, the pretrial order controlled the subsequent course of the case and deemed the pleadings merged therein. See Doc. #263, ¶12; see also Fed. R. Civ. P. 16(d). [4]

## Analysis

The doctrine of equitable tolling may save plaintiff's claims from a statute of limitations defense, but under Colorado law, courts rarely apply the doctrine. Escobar v. Reid, 668 F. Supp.2d

---

[4] In Defendants' Trial Brief – Tolling Of The Statute Of Limitations (Doc. #275), filed June 9, 2010, converted to a motion for judgment on the pleadings on June 16, 2010, defendants argue that the summary judgment order precludes plaintiff from asserting any equitable tolling theory except denial of access to civil law material. Specifically, they argue that Judge Krieger considered and rejected continuing violation and mental incompetence as bases upon which to equitably toll the statute of limitations. Defendants further complain that plaintiff did not previously argue conspiracy or denial of institutional grievances as a basis of equitable tolling.

Under Rule 16(d), Fed. R. Civ. P., the pretrial order controls the subsequent course of the action unless the Court modifies it, which it may do only to prevent manifest injustice. See Fed. R. Civ. P. 16(e). Defense counsel participated in the final pretrial conference and approved the proposed pretrial order which included all of plaintiff's equitable tolling theories. To the extent defendants opposed any new theories, they should have raised their opposition at the final pretrial conference, before submitting a joint proposed pretrial order which included those theories. Defendants point to no manifest injustice which supports modifying the pretrial order, and the Court therefore overrules defendants' motion.

1260, 1272 (D. Colo. 2009) citing Noel v. Hoover, 12 P.3d 328, 330 (Colo. Ct. App.2000)).[5] Equitable tolling is limited to situations in which (1) defendant has wrongfully impeded plaintiff's ability to bring the claim or (2) truly extraordinary circumstances prevented plaintiff from filing his claim despite diligent efforts. Id. at 1228 (quoting Dean Witter Reynolds, Inc. v. Hartman, 911 P.2d 1094, 1099 (Colo.1996)). As noted in Escobar, tolling is not favored by Colorado courts, and the Colorado Supreme Court has never found "extraordinary circumstances" sufficient to toll a statute of limitations. Id (quoting Olson v. State Farm Mut. Auto. Ins. Co., 174 P.3d 849, 858 (Colo. Ct. App. 2007); Brodeur v. Am. Home Assur. Co., 169 P.3d 139, 150 (Colo. 2007).

Plaintiff has the burden to prove that the statute of limitations has been equitably tolled in this case. Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir.2007). Plaintiff presented evidence on five theories which he argues should equitably toll the statute of limitations: (1) conspiracy to deny his civil rights; (2) ongoing continuing violation doctrine; (3) denial of access to civil law material to access the courts with this civil rights complaint; (4) denial of institutional grievances; and (5) mental incompetence.

**I.   Conspiracy**

Plaintiff does not bring a conspiracy claim against any defendant.[6] Plaintiff argues,

---

[5] The issue of tolling is governed by Colorado state law. See Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995) (for actions under 42 U.S.C. § 1983, state law determines appropriate statute of limitations and accompanying tolling provisions).

[6] To state a Section 1983 conspiracy claim, plaintiff must show that the alleged conspirators had a meeting of the minds and engaged in concerted action to violate plaintiff's constitutional rights. Montoya v. Bd. of County Comm'rs., 506 F. Supp. 2d 434, 443 (citing Gallegos v. City & County of Denver, 984 F.2d 358, 364 (10th Cir.1993)). Such a claim may rest upon circumstantial evidence, but plaintiff still must provide sufficient facts to support the inference that some prearranged plan or joint action existed between the conspirators to engage in all of the alleged conspiratorial activities. Id. (citing Hunt, 17 F.3d at 1266).

-4-

however, that (1) beginning as early as October of 2000, defendants at CSP engaged in a conspiracy with each other and with prison officials at SCF to keep him in administrative segregation, and (2) the conspiracy equitably tolls the statute of limitations as to his due process claims.

Plaintiff seems to argue that under the continuing violation doctrine, claims which are otherwise time-barred are saved if they result from a conspiracy which began before the statute of limitations expired. The Court need not linger on this theory, as plaintiff's evidence of a conspiracy is wholly unpersuasive. Simply stated, the record reveals no credible evidence that defendants engaged in a conspiracy, let alone a conspiracy which wrongfully impeded plaintiff's ability to bring this lawsuit or prevented him from filing his claims despite diligent efforts.[7]

## II.    **Continuing Violation Doctrine**

Plaintiff claims that beginning in August of 2000, defendants violated his due process rights by placing him in administrative segregation without providing proper notice or an opportunity to be heard, and by thereafter recommending that he remain in administrative segregation without providing such notice or hearings. Plaintiff argues that because he was confined to administrative segregation for "three straight years" in violation of his rights to procedural due process, the continuing violation doctrine tolls the two-year statute of limitations.

For the continuing violation doctrine to apply, plaintiff must show at least one act that occurred within the statutory filing period to which incidents which are otherwise outside the statute

---

[7]    In fact, the record contains no evidence that plaintiff made attempts – diligent or otherwise – to file suit before June 20, 2005. Plaintiff was released from administrative segregation on August 11, 2003 – nearly two years before he filed suit and transferred out of CSP. Plaintiff apparently had no contact with defendants after he transferred from CSP, and plaintiff offers no evidence that a failed conspiracy to keep him in administrative segregation at SCF and CSP prevented him from filing this action before June 20, 2005.

of limitations are sufficiently related to constitute a continuing pattern of conduct. McCormick v. Farrar, 147 Fed. Appx. 716, 720 (10th Cir. 2005) (assuming without deciding that continuing violation doctrine applies in Section 1983 cases); Montoya, 506 F. Supp. 2d at 442. In her summary judgment order, Judge Krieger found that the continuing violation doctrine did not apply because the acts about which plaintiff complained were discrete actions which occurred outside the limitations period rather than continual unlawful acts. See Doc. #166 at 19-20. Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." McIlravy v. Kerr-McGee Coal Corp. 204 F.3d 1031, 1034 (10th Cir. 2000) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). Law of the case is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation. Id. at 1035, n. 1. The Tenth Circuit recognizes only three "exceptionally narrow" grounds for departure from that rule of practice: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." Id. (quoting United States v. Alvarez, 142 F.3d 1243, 1247 (10th Cir.), internal citations omitted).

At trial, plaintiff presented no evidence which substantially differs from that which he offered at summary judgment. He also cites no controlling authority which, since Judge Krieger entered her order, has made a contrary decision of law that applies to the continuing violation issue. Finally, after hearing evidence, the Court concludes that the Judge Krieger's decision was not clearly erroneous and that plaintiff's tolling theory in this regard is unpersuasive.

**III.    Denial Of Access To Civil Law Material**

Plaintiff argues that during a meeting in defendant Hunter's office on an unspecified date, he asked Hunter to help him access legal materials in order to file a Section 1983 claim against Hunter and others, and that Hunter's refusal to do so tolls the statute of limitations. Plaintiff offered evidence that Hunter responded to his request by stating, "Why would I help you sue me? Do you think you would help me sue you?"[8] Hunter testified that he never made such a statement to plaintiff and that he had no authority over plaintiff's ability to access the law library.

The essence of a denial of access claim is that official action denied plaintiff an opportunity to litigate that claim. Christopher v. Harbury, 536 U.S. 403, 414 (2002). Based on the evidence, the Court cannot conclude Hunter deprived plaintiff of any opportunity to litigate the Section 1983 claims which plaintiff later brought in this case. As noted, plaintiff filed his complaint nearly two years after he was released from administrative segregation and transferred from CSP. Furthermore plaintiff testified that he made numerous requests – which were granted – to access the library and other legal materials at other facilities. Plaintiff's testimony that at CSP he made weekly requests which someone ignored is not credible. Plaintiff is not entitled to equitable tolling on the theory that Hunter, or anyone else, impeded his access to legal materials or the courts.

**IV.    Denial Of Institutional Grievances**

Plaintiff argues the statute should be tolled because Hunter prevented him from grieving his administrative segregation classification by telling plaintiff that his classification was not grievable.

---

[8]    Plaintiff also presented evidence that once, when he submitted a written request to the prison library seeking information about the length of time he had to collaterally attack his Maryland convictions, an unnamed CSP personnel responded that he would have to "ask Maryland." Plaintiff and his mother also presented evidence that pursuant to prison policy she was not allowed to send him legal mail. Finally, plaintiff testified that while at CSP, he submitted weekly requests for access to the law library.

This theory has no apparent connection to the timing of this lawsuit, and presents no equitable basis for tolling.

## V.     **Mental Incompetence**

Plaintiff argues that because he suffered from paranoid schizophrenia and less than optimal mental conditions in administrative segregation, the statute of limitations should be tolled. In the summary judgment order, Judge Krieger concluded that plaintiff had presented no evidence that his mental condition prevented him from timely asserting his claims. See Doc. #166 at 16. Similarly, at trial, plaintiff offered no evidence that his mental illness (paranoid schizophrenia in remission) or any other mental condition in any way prevented him from timely asserting claims in this litigation.

## **ORDER TO SHOW CAUSE**

Based on the evidence presented at trial on July 12, 2010, the Court directs plaintiff to show cause in writing on or before 3:00 p.m. on July 14, 2010 why defendants should not be entitled to judgment and/or qualified immunity on plaintiff's remaining claims, i.e (1) plaintiff's due process complaints that (a) Slack approved a Administrative Segregation Classification review on June 20, 2003 (Ex. 118); (b) Comb and Carroll recommended that plaintiff be retained in administrative segregation on July 2, 2003 (Ex. 119) and (c) Slack approved a Administrative Segregation Classification Review on July 21, 2003 (Ex. 119); (2) Hunter retaliated against plaintiff in violation of the First Amendment; and (3) Hunter denied him access to legal materials and the courts.

The Court notes that plaintiff went into CDOC custody on August 16, 2000, at the DRDC. Because of his criminal history and the fact that he had escaped from the Denver County Jail on May 30, 1999, prison officials concluded that he posed a severe threat to the safety and security of the

facility, staff, other inmates and the general public. See Ex. 2. On September 8, 2000, prison officials notified plaintiff that a classification hearing was set for September 11, 2000 to determine whether he should be assigned to administrative segregation, and informed him of his right to attend and present witnesses under Administrative Regulation ("AR") 600-2. The hearing, which plaintiff attended, occurred on September 11, 2000. The classification committee concluded that plaintiff posed a severe threat to the security of the facility and that to prevent escape, plaintiff should be assigned to maximum security administrative segregation. The committee decision was affirmed on September 14, 2000, and plaintiff received a copy of the decision and the reasons therefor.

On September 15, 2000, plaintiff appealed the decision to assign him to administrative segregation. He did not complain about procedural irregularities, but argued that the decision was substantially unreasonable because he had already done 15 ½ months of segregation for the escape, had already returned to general population, posed no threat to inmates or staff and was being punished "3 times for the same case." On October 15, 2000, CDOC upheld plaintiff's classification under AR 600-2. (Ex. 151).

Meanwhile, on September 20, 2000, plaintiff transferred to SCF, where he remained in administrative segregation until he transferred to CSP on April 17, 2002. While plaintiff was at SCF, CDOC conducted periodic reviews of plaintiff's administrative segregation classification. See Ex. 101 (reviews on November 13 and December 10, 2001) and Ex. 102 (review on January 10, 2002). On each occasion, CDOC concluded that because plaintiff posed a severe threat to the security of the facility and to prevent escape, plaintiff should remain in administrative segregation.

At SCF, the point of administrative segregation was to position the offender to return to general population by demonstrating appropriate behavior and program compliance through various levels of supervision. By all accounts, plaintiff was a model prisoner. He progressed to "level 3" on April 30, 2001 and was scheduled to see the "level 4 board" on November 13, 2001. Satisfactory completion of level 4 was necessary for plaintiff to be considered for transfer to general population. Inmates at level 4 had more privileges than other inmates in administrative segregation, and level 4 represented a transition between administrative segregation and general population. Plaintiff's case manager informed him that it was in his best interest to participate in the review process, but plaintiff refused to attend level 4 hearings on October 12 and November 13, 2001. On December 12, 2001 and again on January 10, 2002, the board continued plaintiff at level 3 in administrative segregation because plaintiff posed a severe threat to the security of the facility and to prevent escape.

SCF is only authorized to order administrative segregation for short periods of time (six to 30 months) and CSP is set up to address the long-term needs of offenders in administrative segregation. Therefore, on January 17, 2002, plaintiff's case manager told him to "either get with the program or CSP will be going soon!" Plaintiff nonetheless refused to meet with the level 4 board at the rescheduled hearing on February 28, 2002. On April 17, 2002, due to plaintiff's refusal to progress out of administrative segregation at SCF, CDOC transferred plaintiff to CSP for long term segregation to address his severe threat to the security of a facility and to prevent imminent injury to an inmate or employee.

At CSP, defendants conducted monthly reviews of plaintiff's assignment to administrative segregation. Ex. 106 (May 24, 2002), Ex. 107 (June 28, 2002), Ex. 108 (July 26, 2002), Ex. 109

(August 23, 2002), Ex. 110 (September 27, 2002), Ex. 111 (October 25, 2002), Ex. 112 (November 22, 2002), Ex. 113 (December 27, 2002), Ex. 114 (January 24, 2003), Ex. 115 (February 28, 2003), Ex. 116 (March 28, 2003), Ex. 117 (April 28, 2003), Ex. 118 (May 28, 2003), Ex. 119 (July 2, 2003) and Ex. 120 (July 23, 2003).

Plaintiff does not take issue with defendants' initial decision to assign him to level 1 administrative segregation at CSP on account of his refusal to progress out of administrative segregation at SCF. Likewise, he does not object that defendants progressed him to level 2 administrative segregation on April 24, 2002 (one week after he arrived at CSP), to level 3 administrative segregation on July 24, 2002 (three months thereafter), to the Progressive Reintegration Opportunity Program ("PRO") to transition him from administrative segregation to general population on April 25, 2003, to level 4 administrative segregation on May 27, 2003 or to transfer him out of administrative segregation at CSP to general population at CCF on July 29, 2003. At CSP, plaintiff demonstrated appropriate behavior and program compliance, and essentially earned his way back to general population through the prison discipline process. As noted, plaintiff has no procedural due process complaints in this regard.

Plaintiff's argument is that having accepted him into administrative segregation at CSP, defendants violated his constitutional rights to due process of law between April 17, 2002 and July 29, 2003, when they recommended and decided to keep him in administrative segregation without notice of the charges, the right to be heard by an impartial decision maker or a written statement of reasons. In essence, plaintiff complains that at some undefined point after CSP accepted him into administrative segregation based on his classification from SCF, defendants had a duty to revisit that classification outside of the progressive reintegration process at CSP. Basically, plaintiff insists that

-11-

he had a constitutional right to a hearing to clear his name or expunge his original classification rather than earn his way out of it.

CSP is set up to exclusively house high security offenders who are in long term administrative segregation. In addition to providing a secure environment, CSP generally aims to reintegrate offenders into general prison population by defining behavior expectations and allowing them to progressively earn their return to general population by demonstrating appropriate behavior and program compliance. As case managers and administrators at CSP, defendants were responsible for reviewing plaintiff's progress through the reintegration process.

In deciding whether defendants had a duty to give plaintiff notice and a hearing to re-examine his classification to administrative segregation, the Court looks to Wilkinson v. Austin, 545 U.S. 209 (2005), Hewitt v. Helms, 459 U.S. 460 (1982) (abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995)), and Estate of DiMarco v. Wyo. Dep't of Corr., 473 F.3d 1334 (10th Cir. 2007), among other cases. Due process extends to prisoners, though the extent of that protection is substantially less than that guaranteed to free persons. DiMarco, 473 F.3d at 1339. The touchstone of due process is the nature of the prison conditions themselves in relation to the ordinary incidents of prison life, and any assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts. Id. at 1342.

As noted, plaintiff challenges his classification to administrative segregation and subsequent decisions to keep him there. An informal, nonadversary evidentiary review satisfies due process concerns when prison officials decide that an inmate represents a security threat and place him in administrative segregation as a consequence. Hewitt, 459 U.S. at 476. Due process is satisfied if

the inmate received (1) a sufficient level initial level of process, i.e. notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to place him in administrative segregation; (2) the opportunity to receive notice of and respond to the decision; and (3) safety and security concerns are weighed as part of the placement decision. Id.; DiMarco, 473 F.3d at 1344 (citing Wilkinson, 545 U.S. at 226-27). Plaintiff received both notice of and the opportunity to speak at the DRDC classification hearing on September 11, 2000. Plaintiff also received notice of the classification decision, to which he responded by filing an appeal. The record is replete with evidence that CDOC cited safety and security concerns in its decisions to classify and retain plaintiff in administrative segregation.

Based on these facts, the Court has serious questions whether plaintiff can establish a constitutional violation based on conduct which occurred within the statute of limitations. It therefore directs plaintiff to show cause in writing why plaintiff did not receive all process which was due under the three factors identified in Mathews v. Eldridge, 424 U.S. 319, 335 (1976), and Hewitt v. Helms, 459 U.S. 460 (1983) as discussed in Wilkinson and DiMarco.

Finally, the Court directs plaintiff to show cause in writing why defendants should not be entitled to qualified immunity for any violation of plaintiff's rights to procedural due process. See e.g. Currier v. Doran, 242 F.3d 905 (10th Cir. 2001). The Court also directs plaintiff to show cause in writing why all claims against Hunter on or after June 20, 2003 should not be dismissed.

**IT IS THEREFORE ORDERED** that plaintiff is not entitled to equitable tolling. The Court therefore enters judgment dismissing plaintiff's claims that defendants Slack, Riddle, Hunter, Carroll and Comb deprived him of due process when they recommended or decided to keep him in

administrative segregation without providing a written statement of the reason for their decision or notice or the opportunity to be heard before an impartial decision maker before June 20, 2003.

**IT IS FURTHER ORDERED** that defendants' motions for judgment on the pleadings (Docs. #270, 273, 275, 276, and 277) be and hereby are overruled as moot.

**IT IS HEREBY FURTHER ORDERED** that the parties appear in Courtroom 702 at 4:00 p.m. on Wednesday, July 14, 2010, to address the matters raised in this order to show cause. The jury trial of this matter is hereby continued to Thursday, July 15, 2010 at 1:00 p.m.

Dated this 13th day of July, 2010 at Denver, Colorado.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge